[No. 31613-7-II.   Division Two.   November 23, 2004.]

OLYMPIC PIPE LINE COMPANY, *Respondent*, v. GEORGE THOENY, ET AL., *Appellants*.

382

*Steven B. Tubbs*, for appellants.

*Mark R. Johnsen* (of *Karr Tuttle Campbell*), for respondent.

¶1 Quinn-Brintnall, C.J. — Property owners appeal a superior court order condemning a portion of their property in favor of Olympic Pipe Line Company under RCW 81-.88.020 and chapter 8.20 RCW. They contend that the trial court erred in denying their motion to dismiss Olympic's action because Olympic's statutory authority violates

article I, section 16 of the Washington Constitution.[1] Correspondingly, they argue that the trial court erred in dismissing their inverse condemnation and trespass claims and in denying them interest on their stipulated damages and attorney fees.

¶2 We hold that RCW 8.20.160 is constitutionally valid. We also hold that dismissal of George and Peggy Thoeny's inverse condemnation claim was proper but that the parties' agreement regarding just compensation does not preclude the Thoenys from bringing their claims for an additional trespass in a separate tort action. Further, although we hold that the Thoenys are entitled to interest from the date Olympic's possession of the right-of-way became nonpermissive until compensation was paid into the court, we also hold that because the Thoenys failed to satisfy the necessary criteria, they are not entitled to attorney fees at trial or on appeal. Thus, we affirm in part and reverse in part.

## FACTS

¶3 In 1965, the Northern Pacific Railway Company granted Olympic permission to place an underground pipeline on the railroad's property for $300 per year. In early 1998, the annual fee was raised to $600. Six months later, the then-owner of the railroad[2] sold the 5.59-acre parcel to the Thoenys for $13,000.[3] In October 2000, the Thoenys told

---

[1] Article I, section 16 states:

*No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner,* irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in courts of record, in the manner prescribed by law.

(Emphasis added.)

[2] The Thoenys acquired the property from "ANT, L.L.C."

[3] The Thoeny family had been leasing the parcel for "farm operations" for approximately 50 years.

Olympic they were raising the fee to $2,000 per month.[4] At that time, the Thoenys also informed Olympic that they intended to terminate their agreement on April 12, 2001.[5]

¶4 Olympic disputed the Thoenys' right to unilaterally raise the fee and sought mediation, which was unsuccessful. In April 2001, the Thoenys sent Olympic a letter terminating the agreement, but the parties later agreed to extend the agreement until July 12, 2001. In the meantime, the parties attempted to negotiate an easement for the portion of its pipeline running over their property, but negotiations failed.[6]

¶5 On July 23, 2001, 11 days after the expiration of the parties' temporary agreement, Olympic filed a petition for eminent domain. On August 13, the Thoenys filed an answer, challenging Olympic's authority to institute the proceedings and asserting counterclaims for breach of contract, trespass, and inverse condemnation. In October 2001, the court entered an order finding that the appropriation was necessary for public use. The Thoenys did not appeal the order. Then, on January 14, 2002, the trial court denied the Thoenys' motion to dismiss Olympic's condemnation action. A trial for compensation was set and, after considering the parties' pretrial conference statements, on July 10, 2002, the trial court dismissed the Thoenys' counterclaims with prejudice. But on February 20, 2003, before the trial to determine compensation was held, the parties stipulated: "[J]ust compensation in this case is determined by the difference between the fair market value of the owners' property without the pipeline easement and the

---

[4] A provision in the agreement allowed the annual fee to be adjusted "at any time . . . upon [30] days' written notice." Supplemental Clerk's Papers (Suppl. CP) at 14. The agreement also provided that the property owner could terminate the permit "at any time upon the giving of 180 days' written notice." Suppl. CP at 14.

[5] It is unclear from the record whether the Thoenys intended to continue with the agreement, and to revoke its termination if Olympic agreed to the proposed fee. But Olympic never agreed to the fee.

[6] Apparently, Olympic initially sought a 50-foot easement, but later decided that it needed only 15 feet.

fair market value of the . . . property subject to the easement," or $10,000. Clerk's Papers (CP) at 28-29.

¶6 On February 28, 2003, the trial court entered a "Judgment and Decree of Appropriation of Easement" under RCW 81.88.020 and chapter 8.20 RCW[7] granting Olympic a 15-foot pipeline easement over the Thoenys' property "with all reasonable rights to operate, access, maintain, service, and repair the pipeline without interference." CP at 33. The court ordered the $10,000 be paid over[8] to the Thoenys and it awarded them $750 in statutory costs under RCW 8.25.020.[9] Apparently the trial court denied the Thoenys' request for interest and attorney fees because such fees were not awarded in the written judgment and decree.

¶7 On March 18, 2003, the Thoenys appealed the superior court's January 14 and July 10, 2002 orders (denial of motion to dismiss Olympic's petition and dismissal of

---

[7] RCW 81.88.020 states in part:

The power of eminent domain is hereby conferred upon . . . corporations [having for one of their principal purposes the construction, maintenance and operation of pipelines and appurtenances for the conveyance and transportation as common carriers of oils, gas, gasoline, and other petroleum products] to be used for acquiring rights of way for common carrier pipelines and they shall have the right to condemn and appropriate lands and property and interests therein for their use under the same procedure as is provided for the condemnation and appropriation of private property by railway companies, but no private property shall be taken or damaged until the compensation to be made therefor shall have been ascertained and paid as provided in the case of condemnation and appropriation by railway companies.

And chapter 8.20 RCW sets out the procedures for condemnation by private corporations, including railroads (and by extension, pipeline companies). *See Taylor v. Greenler*, 54 Wn.2d 682, 684, 344 P.2d 515 (1959).

[8] Apparently, Olympic had deposited the $10,000 into the court registry and, although the record does not specify the date, it was probably some time after the parties' February 20, 2003 stipulation.

[9] RCW 8.25.020 provides in part:

There shall be paid by the condemnor in respect of each parcel of real property acquired by eminent domain or by consent under threat thereof, in addition to the fair market value of the property, *a sum equal to the various expenditures actually and reasonably incurred by those with an interest or interests in said parcel in the process of evaluating the condemnor's offer to buy the same, but not to exceed a total of seven hundred fifty dollars.*

(Emphasis added.)

Thoeny's counterclaims) and February 28, 2003 judgment directly to our Supreme Court, which transferred the appeal to this court.

## ANALYSIS

APPEALABILITY

¶8 As a preliminary matter, Olympic argues that in a condemnation action, once public use and necessity are determined, only the amount of damages awarded may be appealed—and because here the parties stipulated to the compensation, there is nothing for this court to review. We disagree.

¶9 An eminent domain, or condemnation, proceeding consists of three phases: (1) adjudication of public use and necessity, (2) determination of compensation, and (3) payment of award with entry into possession. *Orion Corp. v. State*, 109 Wn.2d 621, 667, 747 P.2d 1062 (1987) (citing *State ex rel. Lange v. Superior Court*, 61 Wn.2d 153, 156, 377 P.2d 425 (1963)), *cert. denied*, 486 U.S. 1022 (1988); *City of Seattle v. Loutsis Inv. Co.*, 16 Wn. App. 158, 166, 554 P.2d 379 (1976), *review denied*, 88 Wn.2d 1016 (1977).

¶10 Condemnation proceedings are entirely statutory. *Pelley v. King County*, 63 Wn. App. 638, 641, 821 P.2d 536 (1991) (citing *In re SW. Suburban Sewer Dist.*, 61 Wn.2d 199, 201, 377 P.2d 431 (1963)), *review denied*, 119 Wn.2d 1003 (1992). After the public use and necessity judgment is entered and final, the sole remaining issue is the "compensation and damages to be paid." *Pelley*, 63 Wn. App. at 641 (quoting RCW 8.08.040; 6 JULIUS L. SACKMAN, NICHOLS' THE LAW OF EMINENT DOMAIN § 26.72 (3d ed. 1986) (collateral attacks on condemnation proceedings are prohibited unless procured by fraud, lack of jurisdiction, or an otherwise void judgment)).

¶11 Here, a private corporation instituted the condemnation action, so the procedures for condemnation fall under chapter 8.20 RCW, "Eminent Domain by Corporations." *See Taylor v. Greenler*, 54 Wn.2d 682, 684, 344 P.2d 515 (1959). RCW 8.20.120 states in part:

Either party may seek appellate review of the judgment for damages entered in the superior court within thirty days after the entry of judgment as aforesaid and *such review shall bring before the supreme court or the court of appeals the propriety and justness of the amount of damages* in respect to the parties to the review.

(Emphasis added.) *See also Taylor*, 54 Wn.2d at 688 ("under the procedure for condemnation by corporations . . . and, specifically, RCW 8.20.120 . . . the appeal is limited to the 'propriety and justness of the amount of damages' ").

¶12 In this appeal the Thoenys claim that the statutory authority Olympic seeks to exercise is unconstitutional. We may review such an assertion. *See* RAP 2.5(a)(3). The Thoenys' other assignments, even those regarding dismissal of claims, all deal with the amount of damages. We will therefore address each of the Thoenys' assignments of error in turn.

DISMISSAL OF INVERSE CONDEMNATION/CONSTITUTIONALITY OF STATUTES

¶13 The Thoenys contend that the trial court erred by failing to dismiss Olympic's condemnation petition and instead proceed under the Thoenys' inverse condemnation claim. Its argument as to why this is error has two parts.

¶14 First, they argue, Olympic derived authority to condemn from RCW 81.88.020, which confers the power of eminent domain on "[a]ll corporations having for one of their principal purposes the construction, maintenance and operation of pipelines and appurtenances for the conveyance and transportation as common carriers of oils, gas, gasoline and other petroleum products." The statute provides:

The power of eminent domain is hereby conferred upon such corporations to be used for acquiring rights of way for common carrier pipelines and they shall have the right to condemn and appropriate lands and property and interests therein for their

use under the same procedure as is provided for the condemnation and appropriation of private property by railway companies, but no private property shall be taken or damaged *until the compensation to be made therefor shall have been ascertained and paid* as provided in the case of condemnation and appropriation by railway companies.

RCW 81.88.020 (emphasis added). They argue that because Olympic took the property *before* invoking the statute, it had no authority under this statute.

¶15 Second, they argue that to the extent that Olympic's taking occurred under the purported statutory authority of RCW 8.20.150 or .160, its action conflicts with both RCW 81.88.020, and article I, section 16 of the Washington Constitution. Article I, section 16, provides in part:

No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner.

WASH. CONST. art. 1, § 16.

¶16 The Thoenys argue that two statutes, RCW 8.20.150 and .160, purport to grant Olympic the authority to take their property *before* paying compensation, and therefore they violate the Washington Constitution.

¶17 RCW 8.20.150 states:

No corporation authorized by law to condemn property for public use, *which has heretofore entered or shall hereafter enter upon property for a public use with the consent of the record owner or the person or corporation in possession*, shall be ousted from such possession or prevented from continuing the putting of such property to public use if before entry of judgment of ouster it shall institute proceedings in condemnation to acquire such property for public use, and shall thereafter prosecute the same in good faith and pay any compensation which may be awarded therein.

(Emphasis added.) Similarly, RCW 8.20.160, states:

> No corporation *which shall have been or shall be in possession of property put to public use for three or more years, and while continuing to put such property to public use* shall be ousted therefrom or prevented from continuing such use if prior to the entry of any judgment of ouster it shall institute condemnation proceedings to acquire such property for public use, and shall thereafter prosecute the same in good faith and pay any compensation awarded therein.

(Emphasis added.)

¶18 Without clarifying which of the two statutes were applied here,[10] the Thoenys argue that the trial court erred by failing to dismiss Olympic's claim brought under an unconstitutional statute and proceed under the Thoenys' own inverse condemnation claim.

■ ¶19 A statute is presumed to be constitutional unless its unconstitutionality clearly appears. *Moses Lake Sch. Dist. No. 161 v. Big Bend Cmty. Coll.*, 81 Wn.2d 551, 555, 503 P.2d 86 (1972), *dismissed*, 412 U.S. 934 (1973); *see also Smith v. City of Seattle*, 25 Wash. 300, 308, 65 P. 612 (1901) ("the presumption is always in favor of the constitutionality of a statute; every reasonable doubt must be resolved in favor of the statute, not against it; and the courts will not adjudge it invalid unless its violation of the constitution is, in their judgment, clear, complete, and unmistakable").

¶20 No Washington cases have analyzed RCW 8.20.150 and .160. But in *State ex rel. Eastvold v. Yelle*, 46 Wn.2d 166, 279 P.2d 645 (1955), which examined the constitutionality of the previous "quick take" statute, former RCW 8.04.090 (1951),[11] the court stated:

---

[10] The Narrative Report of Proceedings prepared by the Thoenys' counsel states that "Thoenys moved for partial judgment on the pleadings, noting that Olympic's occupancy had never ceased; and that a taking has already occurred. Olympic defended, citing RCW 8.20.160." Narrative Report of Proceedings (NRP) at 3.

[11] The since-amended "quick take" statute under which the State may take immediate possession of property following entry of an order of necessity.

[U]nder [article I, section 16] ... of the state constitution, a property owner is entitled to a judicial determination of just compensation, and payment thereof, *before* the state can deprive him of possession under the power of eminent domain. This includes the right to a jury trial unless waived. [Former] RCW 8.04.090, inasmuch as it denies the owner these rights, is unconstitutional.

46 Wn.2d at 174 (emphasis added). Assuming that RCW 8.20.160 applies here because the Thoenys' permission had lapsed and Olympic was present without permission for 11 days before filing its condemnation petition, we hold that the statute withstands the Thoenys' challenge.

¶21 In general, Washington courts have followed the rule that remedy for violations of article I, section 16, is the payment of damages, not injunction, for takings of private property. "Before a taking has been completed, injunction is an appropriate remedy to enforce the prepayment requirements of our constitution. But once the taking is complete, payment of just compensation is the only sufficient and suitable remedy." *London v. City of Seattle*, 93 Wn.2d 657, 665, 611 P.2d 781 (1980) (citing *Domrese v. City of Roslyn*, 89 Wash. 106, 154 P. 140 (1916)); *see also State v. Bergh*, 64 Wn.2d 628, 393 P.2d 293 (1964) (where State took possession of property being condemned by stipulation and property owners' lack of cooperation resulted in a violation of statute requiring just compensation issue to be tried within one year, Supreme Court vacated dismissal of condemnation order and ordered default proceedings on just compensation). *But see McPherson Bros. Co. v. Douglas County*, 150 Wash. 221, 272 P. 983 (1928) (where State had built part of highway on land over a weekend, court upheld injunction restraining county from entering on land to finish construction of highway until close of pending condemnation proceedings).[12]

---

[12] The *McPherson* court distinguished other cases based on the particularly egregious facts before it:

While it is true that, in certain cases where the work complained of has been completed, *it has been held that an injunction will not issue and the property owner will be left to his remedy at law*, the cases laying down this principle ... do not present a state of facts such as is now before us, where it

■ ¶22 Here, the Thoenys have not met their burden of proving that the statute is unconstitutional beyond a reasonable doubt. The statute reflects the established constitutional law of this state favoring damages over injunction as a remedy once property has been taken for public use. Here, the pipeline had been in place since 1965 and the use had only become nonpermissive in July of 2001. Moreover, the Thoenys' remedy for a prior taking in an inverse condemnation is money damages. The Thoenys' have not met their burden of showing that the statute is unconstitutional or that money damages is an inadequate remedy.

DISMISSAL OF INVERSE CONDEMNATION AND DAMAGE CLAIMS

¶23 The Thoenys also contend that the trial court erred in dismissing their inverse condemnation and trespass claims.[13]

■ ¶24 When the trial court dismisses a claim as a matter of law, we view the plaintiff's evidence in its most favorable light and determine whether the trial court correctly applied the law in dismissing the action. *Hensel Phelps Constr. Co. v. King County*, 57 Wn. App. 170, 174, 787 P.2d 58 (1990) (citing *Jones Assoc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 465, 704 P.2d 681 (1985)).

INVERSE CONDEMNATION

■ ¶25 The phrase "inverse condemnation" is used to describe an action brought to recover the value of property that has been appropriated by the government in fact, but with no formal exercise of governmental power. *Citoli v. City of Seattle*, 115 Wn. App. 459, 488, 61 P.3d 1165 (2002)

---

is evident that an attempt was made, by taking advantage of a Saturday and Sunday, when courts would not be open to respondent, to obtain such a start on the work that it could be rushed to completion before a restraining order or a temporary injunction could be procured.

150 Wn. at 228-29 (emphasis added).

[13] In their "Answer, Affirmative Defense and Counterclaims," filed August 13, 2001, the Thoenys also claimed breach of contract, based on Olympic's failure to pay the $2,000 per month the Thoenys sought under the license agreement. But the Thoenys do not make any arguments regarding this matter on appeal.

(quoting *Bodin v. City of Stanwood*, 79 Wn. App. 313, 320, 901 P.2d 1065 (1995), *aff'd*, 130 Wn.2d 726, 927 P.2d 240 (1996)), *review denied*, 149 Wn.2d 1033 (2003). In an inverse condemnation action the property owner institutes the action, alleging that the government has effectively taken his property. In contrast, in a condemnation, the entity possessing the condemnation power initiates court action. *Hoover v. Pierce County*, 79 Wn. App. 427, 431, 903 P.2d 464 (1995) (citing *Martin v. Port of Seattle*, 64 Wn.2d 309, 313-14, 391 P.2d 540 (1964), *cert. denied*, 379 U.S. 989 (1965)), *review denied*, 129 Wn.2d 1007 (1996). The measure of damages in a taking case is the diminution in the fair market value of the property caused by the governmental taking or damaging. *Hoover*, 79 Wn. App. at 431 (citing *Petersen v. Port of Seattle*, 94 Wn.2d 479, 482, 618 P.2d 67 (1980)).

¶26 As a matter of law, the trial court's dismissal of the inverse condemnation claim here was proper. In an inverse condemnation claim, the damages are the same as in a condemnation action, and Olympic had already filed its condemnation petition. And during the course of that action, the Thoenys stipulated that just compensation was the diminution in the property's value, or $10,000.

Trespass

¶27 The Thoenys also contend that they are entitled to damages for trespass by Olympic on that portion of their property beyond the 15-foot easement.

¶28 A party is liable for trespass if he or she intentionally or negligently intrudes onto the property of another. *Mielke v. Yellowstone Pipeline Co.*, 73 Wn. App. 621, 624, 870 P.2d 1005, *review denied*, 124 Wn.2d 1030 (1994) (citing Restatement (Second) of Torts §§ 158, 165, 166 (1965)). The owner of an easement trespasses if he or she misuses, overburdens, or deviates from an existing easement. *Mielke*, 73 Wn. App. at 624; *Brown v. Voss*, 38 Wn. App. 777, 781-82, 689 P.2d 1111 (1984), *rev'd on other grounds*, 105 Wn.2d 366, 715 P.2d 514 (1986). Damages for

a temporary invasion or trespass are the cost of restoration and the loss of use. *Keesling v. City of Seattle*, 52 Wn.2d 247, 253, 324 P.2d 806 (1958). Nominal damages may also be available. *Keesling*, 52 Wn.2d at 254.

¶29 Contrary to the Thoenys' assertions, trespass claims are inappropriate as a matter of law in a condemnation action.

¶30 The Thoenys rely on *City of Seattle v. Loutsis Investment Co.*, 16 Wn. App. 158, 554 P.2d 379 (1976), *review denied*, 88 Wn.2d 1016 (1977), for the proposition that "[a]n action for condemnation does not preclude claims for trespass." Br. of Appellant at 6. *Loutsis* involved a constitutional challenge to an urban renewal law and, in addition, alleged trespasses by city employees. But the court stated that plaintiff's "remedy for any damages caused to it by trespass of city employees is by a *separate tort action* against the City and/or against the offending municipal employees." *Loutsis*, 16 Wn. App. at 173 (emphasis added).[14]

¶31 The Thoenys also cite *City of Spokane v. Colby*, 16 Wash. 610, 48 P. 248 (1897), and *State v. Basin Development & Sales Co.*, 53 Wn.2d 201, 332 P.2d 245 (1958), arguing that "an award beyond the initial 'taking' damages for permanent harm is appropriate where the burden is increased, or where the burden goes beyond the property originally described." Br. of Appellant at 7. *Basin Development* states in pertinent part: "If, after the award is made to the property owner, the condemnor deviates from its plans in such a way as to cause a further loss of property value, this constitutes *another condemnation* for which just compensation must again be assessed." 53 Wn.2d at 204 (em-

---

[14] The Thoenys cite *Anderson v. Port of Seattle*, 49 Wn.2d 528, 304 P.2d 705 (1956), for the proposition that they are entitled to damages beyond the taking, provided there is not duplication of recovery. But *Anderson* does not establish that they may bring their trespass claims as part of a condemnation action, only that where property owners had sold properties to a municipality without a depreciation in value, they had been fully compensated for permanent damages to their properties and, therefore, they could not claim temporary damages for the same injuries. 49 Wn.2d 528.

phasis added). *Colby* held that where a right-of-way to lay and maintain a pipeline to connect a pumping station with its distributing station was condemned, the erection of poles and stretching of wires for a telephone line to connect the two stations required an *additional* condemnation proceeding. 16 Wash. at 613.

¶32 *Loutsis, Colby*, and *Basin Development* actually establish that the Thoenys' trespass claims would have been appropriate in a separate action, but as a matter of law, they were not appropriate in a condemnation action already in progress. And in *Pelley v. King County*, 63 Wn. App. 638, 821 P.2d 536 (1991), *review denied*, 119 Wn.2d 1003 (1992), after the State began condemnation proceedings in connection with a road reconstruction project, the trial court dismissed property owners' denial of access and nuisance claims. Division One of this court affirmed:

> Even though the Pelleys' [damage] claims may have merit, their arguments are directed to the wrong forum. We find . . . that once a condemnation proceeding is begun, that proceeding is the only forum in which to determine damages. The proper forum for resolution of these issues is the trial court during the valuation phase of the condemnation proceeding. Any grievance which the Pelleys may have with the County must be resolved there. Here, the Pelleys' claims do not exist outside the condemnation proceeding itself. If, as claimed by the Pelleys, the access road cannot be built in compliance with the applicable standards, they can seek compensation as part of the valuation phase of the condemnation action.

*Pelley*, 63 Wn. App. at 642 (citing *McMoran v. State*, 55 Wn.2d 37, 345 P.2d 598 (1959)). But here, unlike in *Pelley*, the Thoenys' trespass claims involve different land and a different time period than that at issue in the condemnation action. Thus, dismissal was proper.

¶33 The Thoenys are free to bring trespass claims based on Olympic's damage to their land outside of the 15-foot strip subject to the condemnation proceeding and, in addition, based on Olympic's presence on their land after their permission had expired on July 12 and before Olympic filed

its condemnation action. Because these claims are not before us, we express no opinion on their validity.

INTEREST ON DAMAGE AWARD

¶34 The Thoenys also contend that they were entitled to prejudgment interest[15] on their damage award. They argue that interest is appropriate in condemnation proceedings where possession occurs without prior payment or tender of payment.

¶35 The Thoenys assert that interest runs from the date of nonpermissive possession, July 12, 2001, to the date of the judgment, February 28, 2003. They argue that, at the statutory rate of 12 percent per year under RCW 19.52-.010,[16] they would be entitled to $1,959.45 interest.

¶36 We agree that the Thoenys are entitled to prejudgment interest and we remand for a calculation of the amount.

¶37 Chapter 8.20 RCW, "Eminent Domain by Corporations," does not contain a provision regarding prejudgment interest on damages. But *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 935 P.2d 555 (1997) and *State v. Hallauer*, 28 Wn. App. 453, 624 P.2d 736 (1981) support the Thoenys' argument that they are entitled to receive an interest award. In *Sintra*, the court held that in an inverse condemnation action, an award of interest was an element of just compensation. 131 Wn.2d at 655-56. "Interest in this context is not an award of prejudgment interest on a liquidated sum in the traditional sense, but is a measure of the rate of return on the property owner's money had there been no

---

[15] *Compare* RCW 8.28.040, which deals with *postjudgment* interest:

Whenever in any eminent domain proceeding, heretofore or hereafter instituted for the taking or damaging of private property, a verdict shall have been returned by the jury, or by the court if the case be tried without a jury, fixing the amount to be paid as compensation for the property so to be taken or damaged, such verdict shall bear interest at the maximum rate of interest permitted at that time under RCW 19.52.020 from the date of its entry to the date of payment thereof.

[16] RCW 19.52.010(1) states in part: "Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties."

delay in payment." *Sintra*, 131 Wn.2d at 656. *Sintra* involved an inverse condemnation action and, thus, does not control our decision here. But its analysis is helpful.

¶38 *Hallauer*, involving a RCW 8.04.090 "quick-take" action by the State, held that the State was required to pay interest on a stipulated judgment that made no provision for interest. The Thoenys argue that the "underpinnings of the court's ruling"[17] in *Hallauer* mandate an award of interest here:

> These [quick-take] statutes *follow the doctrine that interest is allowable in an action for eminent domain* and starts to run from the time possession of the property actually was taken. *In re [City of] Anacortes*, 81 Wn.2d 166, 500 P.2d 546 (1972); *Smithrock Quarry, Inc. v. State*, 60 Wn.2d 387, 374 P.2d 168 (1962); *Decker v. State*, 188 Wash. 222, 62 P.2d 35 (1936).

28 Wn. App. at 456-57 (emphasis added). The court continued,

> In *PUD 1 v. Washington Water Power Co.*, 20 Wn.2d 384, 387-88, 147 P.2d 923 (1944), the court quoted the following language with approval from 2 J. Lewis, *Eminent Domain* § 742 (3d ed. 1909):
>
> (T)he estimating and payment of the compensation should be concurrent with the taking. . . . As his just compensation is withheld from him, though necessarily, he should have an equivalent for such withholding, and that, in law, is legal interest.

*Hallauer*, 28 Wn. App at 457 (alteration in original).[18]

---

[17] Reply Br. of Appellant at 7.

[18] The court also cited out-of-state cases with approval:

> "The correct rule and the one which is supported by the overwhelming weight of authority, is that the condemnee should be allowed interest upon the compensation and damages awarded from the time the condemnor either takes possession, or becomes entitled to possession, of the property."

*Independent School Dist. v. C.B. Lauch Constr. Co.*, 78 Idaho 485, 493, 305 P.2d 1077 (1957). *Also see Snowden v. Shelby County*, 118 Tenn. 725, 102 S.W. 90 (1907).

*Hallauer*, 28 Wn. App. at 457-58 (quoting *Anacortes*, 81 Wn.2d at 168-69).

¶39 While in *Hallauer* and most of the cases it cites, the State was the condemnor, a public service corporation's power of eminent domain derives from the State by statute, and we see no meaningful distinction on that ground. *See Neitzel v. Spokane Int'l Ry.*, 65 Wash. 100, 105, 117 P. 864 (1911).

¶40 *Hallauer* implies that interest on an award is the general rule in eminent domain actions. And although the State enjoys a sovereign immunity from payment of interest, unless it places itself in a position of liability by contract or statute,[19] private entities (including Olympic) do not enjoy this immunity.

¶41 We therefore hold that the rationale for awarding interest in an inverse condemnation proceeding, where a taking occurs before payment is made, applies here, where Olympic's taking also occurred before payment was made. *See Sintra*, 131 Wn.2d at 655-56. Under this rule, interest is to be awarded on an action for eminent domain where possession occurs before payment of compensation into the court, and we remand to the trial court for calculation of an award of interest on the stipulated judgment.[20]

ATTORNEY FEES

¶42 The Thoenys also contend that they are entitled to reasonable attorney fees under RCW 8.25.070(1):

> [I]f a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:
>
> . . . .

---

[19] *E.g.*, *Architectural Woods, Inc. v. State*, 92 Wn.2d 521, 598 P.2d 1372 (1979).

[20] Olympic complains "[i]t would be unfair to impose prejudgment interest under the facts of this case" because the Thoenys caused delays by asserting other claims against Olympic and although Olympic moved for trial almost immediately, it was unable to obtain a trial date from the court. Br. of Resp't at 17. But Olympic does not cite authority for this argument, and without citation to authority, we will not consider the argument further. *See Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). We leave for the trial court the issue of whether interest accrued during any delays the Thoenys may have caused.

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

¶43 The purpose of RCW 8.25.070 is to encourage settlement before trial and ensure that each side makes a good faith effort to settle. *State v. Olson*, 31 Wn. App. 403, 407, 642 P.2d 410, *review denied*, 97 Wn.2d 1023 (1982).

¶44 Here, the Thoenys do not meet the statutory criteria for such an award. The statute applies "[i]f a *trial* is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned." RCW 8.25.070 (emphasis added). Although the parties' agreement was not a stipulated judgment and the trial court examined and resolved certain matters,[21] the Thoenys *waived* trial on the amount of just compensation for the taking of the 15-foot strip and accepted the $10,000 as just compensation for this loss. Thus they did not meet the statutory criteria, and an attorney fee award was inappropriate. *See State v. Buckley*, 18 Wn. App. 798, 801, 572 P.2d 730 (1977) (condemnees not entitled to an award under RCW 8.25.070 because they had waived trial as to amount of compensation and accepted the amount offered by the State); *cf. State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) (noting that under statute's plain language, "judgment awarded as a result of the trial" is to be compared with "highest written offer in settlement" and not necessarily "just compensation" amount).

¶45 We remand to the trial court for determination of an appropriate award of interest, but we affirm in all other respects.

HOUGHTON and BRIDGEWATER, JJ., concur.

Review denied at 154 Wn.2d 1026 (2005).

---

[21] A trial is the judicial examination of the issues between the parties, whether they are issues of law or of fact. CR 38.