**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| TED SPICE, | No.  48075-1-II |
| Appellant, | |
| v. | |
| BRYAN BARTELSON and DOROTHY M. BARTELSON, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Ted Spice and Bryan and Dorothy Bartelson,[1] adjacent property owners, were prior litigants in a lawsuit resulting in two superior court orders, including an order restricting the Bartelsons from claiming a water easement through Spice's property.  Spice later sued the Bartelsons for trespass over the Bartelsons's use of a water line through Spice's property.  Spice appeals the superior court's summary judgment order and ruling that he did not meet the exclusive possession element on his claim of trespass against the Bartelsons.  We hold that, under the plain language of the superior court's prior orders, (1) Spice's property is not subject to a claim for water service by the Bartelsons and (2) Spice has established trespass through misuse of the easement. We also hold that the superior court erred in granting summary judgment to the Bartelsons, awarding statutory costs, and in denying Spice's motion to reconsider.  Thus, we reverse the

---

[1] The correct spelling of Respondents' last name appears to be *Bartelson*, based on signatures. Both versions—*Bartelson* and *Bartleson*—appear in the record with equal frequency.

superior court's order granting summary judgment to the Bartelsons, the court's award of statutory costs to the Bartelsons, and the superior court's order denying summary judgment to Spice. We also grant summary judgment to Spice on his trespass claim against the Bartelsons and remand to the superior court to determine the nature and extent of the damages to Spice.

FACTS

I. BACKGROUND

Spice and the Bartelsons are neighboring property owners in Puyallup, Washington. Spice owns two properties and the Bartelsons own three properties.[2] The property parcel numbers, addresses, and ownership are depicted in the following chart:

| Parcel | Address | Owner |
|--------|---------|-------|
| 0420224094 | 11403 to 11405 58th St. Ct. E. | Bartelsons (Duplex) |
| 0420224095 | 11323 to 11325 58th St. Ct. E. | Bartelsons (Duplex) |
| 0420224138 | 11306 58th St. Ct. E. | Bartelsons (Five Acre) |
| 0420224137 | 11305 58th St. Ct. E. | Spice |
| 0420224096 | 11319 58th St. CT E. | Spice |

Access disputes arose between the Bartelsons, who owned only the Five Acre parcel at the time, and the other property owners on 58th St. Ct. E. that resulted in a right-of-way litigation in 2008. During the right-of-way litigation, Spice separately sued the Bartelsons in 2009 for using a

_____

[2] All five properties were previously owned by James Williams as one estate. The estate was subdivided over time, but an easement for ingress and egress along the main driveway (58th St. Ct. E.) was not granted as each property was sold.

water line that ran from the Bartelsons's Five Acre parcel, through Spice's 11319 parcel, and which connected to Spice's water meter. The superior court consolidated the cases and, after the parties resolved their dispute, the superior court entered two orders dated April 16, 2010, the "Road Easement" and the "Road Maintenance Order,"[3] and a "Water Line Order."[4] Clerk's Papers (CP) at 286-317, 190-201. These orders included reciprocal easements for the purpose of maintaining the road at 58th St. Ct. E. and provided cost sharing provisions for such maintenance. The Water Line Order expressly addressed any claim by the Bartelsons for water service through Spice's properties. In this appeal, the parties dispute whether the Bartelsons have a right to install and use a water line within the road easement.

## II. PRIOR LITIGATION ORDERS

### A. ROAD EASEMENT

The Road Easement (58th St. Ct. E.) connects to 114th Ave. E. then travels west through the Bartelsons's duplex properties, then across both of Spice's parcels, and ends on the Bartelsons's Five Acre parcel. Because of the parties' settlement, the superior court moved part of the Bartelsons's Five Acre boundary line west to ensure right-of-way access by Spice to his property at 11305. The Road Easement includes the parties' reciprocal easements.

---

[3] Exhibits E and G, respectively, of the Order Re Joint Easements for Road and Road Maintenance (April 16, 2010). CP 298-301, 306-16.

[4] Amended Order Re Joint Easement for Water Lines and Release of Claim of Water Service (April 16, 2010). CP 190-201. The superior court amended the Water Line Order during the prior litigation to address the fear of a future ambiguity surrounding the permitted use of the Road Easement.

In the Road Easement, Spice conveyed to the Bartelsons "a permanent non-exclusive road easement a road easement (sic) and right-of-way with the right to erect, construct, install, lay and thereafter use, operate, inspect, repair, maintain, and replace over, across and/or under a certain parcel of real property [describes the location of the road]." CP at 298. The Road Easement further states that "this easement and right-of-way shall give and convey to [the Bartelsons] the right of ingress and egress . . . for the purpose of constructing, maintaining and repairing the above described road improvements." CP at 300. The Road Easement "includes a construction easement over, across, and under [58th St. Ct. E.] for installation of any gravel necessary for full use of the property and *any other terms in the Road Maintenance Order*." CP at 300 (emphasis added). The Road Easement does not mention utilities, but it expressly refers to the terms of the Road Maintenance Order.

B. ROAD MAINTENANCE ORDER

Because the parties desired "to provide for the future maintenance and repair of [58th St. Ct. E.] and to share the cost of such maintenance and repair in a fair and equitable manner," the superior court entered a separate Road Maintenance Order for road maintenance and cost sharing. CP at 307. The Road Maintenance Order addresses paving improvements and maintenance, initiating and sharing costs for common work, initiating and paying for individual work, and maintaining the landscaped sides of the road.

The Road Maintenance Order also includes a provision that reads: "The Road [Easement] shall include all and any amenities within the easement areas such as paving, gravel, landscaping, *common utilities*, fences, etc." CP at 307 (emphasis added). On appeal, Spice and the Bartelsons dispute the meaning of the phrase "*common utilities.*"

4

In addition to the Road Easement and Road Maintenance Order, the superior court simultaneously ordered a release of claim of water service (Water Line Order) for Spice and against the Bartelsons.

C.  WATER LINE ORDER

The Water Line Order addresses two issues relevant to this appeal: (1) the water line that fed a spigot on the Bartelsons's Five Acre parcel but attached to Spice's water meter and (2) Spice's desire to prevent the Bartelsons from using Spice's properties for a water easement.

The Water Line Order states, "[Appellant is] hereby allowed to cap off any water lines currently servicing the properties [11305 and 11319] that extend onto the Bartleson (sic) [Five Acre parcel]." CP at 191.

The second relevant provision of the Water Line Order states, "[Appellant's] properties will not be subject to any claim for easement for water, or water rights for the benefit of the Bartleson (sic) [Five Acre parcel]." CP at 191.  Spice asserts that the superior court amended the Water Line Order to include a release of water claim by the Bartelsons to clarify the rights of the parties with respect to water use in the Road Easement.

D.  EVENTS LEADING TO LITIGATION

After entry of the superior court's orders, Spice immediately capped the water line connecting the Bartelsons's Five Acre parcel with Spice's water meter.  The Bartelsons began using portable toilets on the Five Acre parcel since they no longer had water service.  Eventually, Spice noticed that the portable toilets were gone and began investigating the Bartelsons's apparent water source.  The parties agree that the water line now servicing the Bartelsons's Five Acre parcel

runs from the Bartelsons duplex at 11323-25, to and along 58th St. Ct. E., through Spice's property, and ends at the Bartelsons's Five Acre parcel.

E. THE CURRENT WATER LINE

The parties disagree over who installed the Bartelsons's current water line and when the installation occurred.

Spice argues that the water line was installed after the prior litigation and thus the water line is subject to the superior court's prior orders. Spice relies on (1) a work order installing a new line, valve, and meter at the 11323-25 duplex in 2008, but that did not include extending the line to the Five Acre parcel, (2) the fact that the water line's construction is modern plastic and not galvanized steel like the original water lines on the properties, (3) the seller's statement that the Five Acre parcel did not contain a water utility when sold, and (4) a tenant's statement who used an office on the Five Acre parcel for 15 years without water access.[5] Spice concedes that there may have been water on the Five Acre parcel prior to the Bartelsons's purchase;[6] however, Spice argues that water access was cut off once the water line to his meter was capped shortly after the prior litigation ended.

---

[5] The tenant moved out in 2004 at Williams's death and was the last occupant of the property prior to the Bartelsons's ownership.

[6] A tenant from the 1980's testified that there was running water on the property from at least two spigots. Bryan Bartelson testified that the property had three working spigots and plumbing fixtures in two of the buildings when they bought the property.

The Bartelsons argue that they discovered an existing water line and began using it. After the water access was capped, the Bartelsons state that they investigated and found a spigot on the Five Acre parcel that produced water when they turned on a valve at their 11323-25 duplex. The Bartelsons further state that this spigot on the Five Acre parcel did not work when the Five Acre parcel was receiving water from the line attached to Spice's meter. The Bartelsons contend that the water line they are using is on a separate, pre-existing line than the one installed at the 11323-25 duplex in 2008. The Bartelsons state that the water line installed at the duplex in 2008 ran from the meter on 114th Ave. E. to the 11325 side of the duplex; yet the current water line at issue runs from the 11323 side of the duplex to the Five Acre parcel. Spice refutes the Bartelsons's account stating that there was no valve for the Bartelsons to turn on at the duplex because the duplex's water control valves were always turned on in order to provide water service to the tenants.

The Bartelsons assert that after discovering the water line, they traced the line and found that it followed the road easement. The Bartelsons extended the water line past the road easement to better serve the Five Acre parcel. During a road easement improvement project, Bryan Bartelson states that he dug up and replaced the original water line because it was a grey electrical pipe instead of a black water pipe.

III. SPICE'S LAWSUIT, SUMMARY JUDGMENT MOTIONS, AND THE COURT'S RULING

In 2014, Spice sued the Bartelsons, claiming that the Bartelsons's installation and use of the water line constitutes an intentional and continuing trespass on Spice's property. The Bartelsons served interrogatories on Spice and asked Spice to itemize his damages. Three months later, Spice responded as follows: "1. Reasonable value of use of property since the water line(s) were installed. 2. Costs of removing water line(s). Amounts are being determined by an appraiser,

and this answer will be supplemented when the report is received." CP at 523. In response to the Bartelsons's interrogatory asking if the alleged trespass restricts Spice's use of his property, Spice responded, "Current use is not hindered, but future development of the property is potentially restricted." CP at 524. In response to the Bartelsons's request for production to provide copies of bills paid as a result of the trespass, Spice provided a water locator service invoice for $360. Spice did not supplement his responses to the interrogatories.

During Spice's deposition, the Bartelsons asked Spice to explain how he has been damaged by the alleged trespass. Spice responded, "I can't give you specifics. . . . I've got a guy who is going to do the appraisal on what the damages are, and I can't give you specifics on all that." CP at 166. When the Bartelsons asked whether there were any other damages, Spice's responses and the follow up questions were as follows:

> [Spice]: Well, I mean, it could be - - you could factor in: What is the potential use of the property.
>
> Q: What - - - potential use of your property?
>
> [Spice]: Of his property, his five Acre.
>
> Q: How is that a damage to you?
>
> [Spice]: It could be - - - if he's benefiting financially . . . there should be some value to me . . . using my easement. [U]sing those water lines across my property to supply his development.

CP at 168-69.

Spice filed a motion for summary judgment arguing that the Bartelsons did not have an easement for water use through Spice's property under the Road Easement and Road Maintenance Order, or the Water Line Order. The Bartelsons responded and filed a cross motion for summary

judgment, arguing that their actions are permitted under the Road Easement and Road Maintenance Order. Spice moved to continue the summary judgment hearing to provide additional evidence on his damages. The Bartelsons objected and the superior court did not rule on the request for a continuance.

After hearing arguments on the cross summary judgment motions, the superior court agreed with the Bartelsons and ruled that the Road Maintenance Order provides for the right to install "common utilities" within the road easement, and also ruled that water is a "common utility." Verbatim Report of Proceedings (VRP) at 26. The superior court ruled that "there was no invasion by [the Bartelsons of Spice's] property interest in the exclusive possession of his land since the property in question was subject to easement for roads and common utilities." CP at 353. The superior court granted summary judgment to the Bartelsons, dismissed Spice's claim with prejudice, and denied summary judgment to Spice. The superior court also awarded the Bartelsons $320 in statutory costs.[7]

Spice filed a motion for reconsideration and also filed three documents supporting his request for damages: An invoice billing the cost of locating the water line ($360), an estimate of the cost to remove the water line ($11,852), and an appraiser's report estimating the value of the water easement, if sold ($9,702). The Bartelsons objected that the damages evidence is not newly discovered evidence under CR 59(a)(4) and should not be considered, and that the receipts did not change the superior court's ruling that Spice failed to show exclusive possession of the property at issue. The superior court denied Spice's motion to reconsider. Spice appeals.

---

[7] The court did not cite any authority in its order.

ANALYSIS

I.  STANDARD OF REVIEW

We review a summary judgment order de novo and engage in the same inquiry as the superior court.  *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n*, 184 Wn. App. 593, 599, 337 P.3d 1131 (2014).  Summary judgment is proper if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "'A material fact is one that affects the outcome of the litigation.'"  *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (quoting *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005)).  We view the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party.  *Club Envy*, 184 Wn. App. at 599.

II.  LEGAL PRINCIPLES

The owner of an easement trespasses[8] if he misuses or deviates from an existing easement. *Olympic Pipe Line Co. v. Thoeny*, 124 Wn. App. 381, 393, 101 P.3d 430 (2004).  "Damages for a temporary . . . trespass are the cost of restoration and the loss of use.  Nominal damages may also be available."  *Olympic Pipe Line*, 124 Wn. App. at 393-94 (citations omitted).

---

[8] To establish a claim of trespass, a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) that it is reasonably foreseeable that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages. *Wallace v. Lewis County*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006).  Because we hold that Spice prevails on his trespass claim against the Bartelsons based on the plain language of the Road Easement, the Road Maintenance Order, and the Water Line Order entered by the superior court, we do not discuss each element of trespass.

A. INTERPRETATION OF THE SUPERIOR COURT'S ORDERS

Spice argues that the superior court erred in ruling that the term "utilities" includes the Bartelsons's installation and use of a water line that crosses through Spice's property at the location of the road easement. The Bartelsons argue that the superior court correctly interpreted the term "utilities" to include their right to access water through Spice's property. We read the Road Easement and Road Maintenance Order together with the Water Line Order because the superior court entered these orders on the same day. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880 73 P.3d 369 (2003). When the orders are read together, we agree with Spice that the plain language of the Road Maintenance Order does not define or expand the *scope* of the Road Easement and further hold that the plain language of the Road Easement does not allow Bartelson to use or install a water line across Spice's property. Thus, we reverse the superior court's order granting summary judgment to the Bartelsons, reverse the court's award of statutory costs to the Bartelsons, and reverse the superior court's order denying summary judgment to Spice. We also grant summary judgment to Spice on his trespass claim against the Bartelsons, and remand to the superior court to determine the nature and extent of the damages to Spice.

1. The Road Easement

The Road Easement states that the Bartelsons are granted "a permanent non-exclusive road easement a road easement (sic) and right-of-way with the right to erect, construct, install, lay and thereafter use, operate, inspect, repair, maintain, and replace over, across and/or under a certain parcel of real property [describes the location of the road]." CP at 298. The Road Easement further states that "this easement and right-of-way shall give and convey to [the Bartelsons] the right of ingress and egress . . . for the purpose of constructing, maintaining and repairing the above

described road improvements." CP at 300. The plain language of the Road Easement does not include the word "utilities" and provides the parties only the right of ingress and egress to the properties, and for road maintenance and improvements along 58th St. Ct. E.

2. The Road Maintenance Order

The language of the Road Maintenance Order describes the terms of maintenance of the road and the responsibilities of the parties to address future road maintenance, nothing more. The Road Maintenance Order expressly provides "for the future maintenance and repair of [58 St. Ct. E.] and to share the cost of such maintenance and repair in a fair and equitable manner." CP at 307. When read together with the Road Easement, the Road Maintenance Order does not define or expand the *scope* of the Road Easement. Specifically, the Road Maintenance Order does not expand the use of an easement designed for ingress and egress to allow for utilities.

3. The Water Line Order

The Water Line Order expressly provides that "[Spice's] properties will not be subject to any claim for easement for water, or water rights for the benefit of the Bartleson (sic) property." CP at 191. The plain language of the Water Line Order does not allow the Bartelsons to subject Spice's property to an easement for water to benefit the Bartelsons.

As analyzed above, the Road Maintenance Order did not define or expand the scope of the Road Easement; the Road Maintenance Order only detailed the parties' rights and responsibilities for maintaining and improving the road. The language of the superior court's orders is clear and unambiguous. Thus, we hold that the Bartelsons do not have a claim for water service over Spice's properties.

B.  SUMMARY JUDGMENT ORDERS

The superior court found that Spice failed to prove exclusive possession[9] of the road at 58th St. Ct. E., "[T]he [c]ourt finds that there was no invasion by [the Bartelsons of Spice's] property interest in the exclusive possession of his land since the property in question was subject to easement for roads and common utilities."  CP at 353.  Based on our analysis above, the Bartelsons do not have a claim for water service over Spice's properties.

Because the parties filed cross motions for summary judgment, we must view the evidence in a light most favorable to the non-moving party.  CR 56; *Club Envy*, 184 Wn. App. at 599.  As to the Bartelsons's motion for summary judgment, we view the evidence in a light most favorable to Spice.  As analyzed above, because we hold that the Bartelsons do not have a claim for water service through Spice's properties, we hold that the superior court erred in granting summary judgment to the Bartelsons and erred in denying Spice's motion to reconsider.

As to Spice's motion for summary judgment, we view the evidence in a light most favorable to the Bartelsons.  The Bartelsons's use of the water line was a misuse of the road easement and, thus, a trespass.  *See Olympic Pipe Line*, 124 Wn. App. at 393.  Therefore, we hold that the superior court erred in denying summary judgment to Spice.

---

[9] The superior court did not rule on the remaining three elements of trespass—an intentional act, a reasonable foreseeability that the act would disturb the plaintiff's possessory interest, or actual and substantial damages.  *See Wallace*, 134 Wn. App. at 15.

ATTORNEY FEES AND COSTS

Both parties claim attorney fees and costs on appeal under RCW 4.24.630(1)[10] and under the Road Maintenance Order.[11]

Because we reverse the superior court's order granting summary judgment to the Bartelsons and award of statutory costs to them, we also deny the Bartelsons's attorney fees and costs and award attorney fees and costs to Spice.

CONCLUSION

We hold that, under the plain language of the superior court's prior orders, Spice's property is not subject to a claim for water service by the Bartelsons and Spice has established trespass through misuse of the easement. We also hold that the superior court erred in granting summary judgment to the Bartelsons, awarding statutory costs, and in denying Spice's motion to reconsider. Thus, we reverse the superior court's order granting summary judgment to the Bartelsons, the court's award of statutory costs to the Bartelsons, and the superior court's order denying summary

---

[10] RCW 4.24.630(1) in relevant part states that the trespasser "is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs."

[11] The relevant part of the Road Maintenance Order allowing for attorney fees and costs states, "In the event that any Owner incurs costs and attorney's fees in enforcing this Order, the prevailing party shall be awarded such costs and attorney's fees against the other Owner, provided such costs and fees are reasonable and necessary." CP at 310.

judgment to Spice. We also grant summary judgment to Spice on his trespass claim against the Bartelsons and remand to the superior court to determine the nature and extent of the damages to Spice.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

WORSWICK, J.